LANCE, Judge,
with whom SCHOELEN, Judge,
joins, concurring in part and dissenting in part:
While I agree with the outcome on the theory that was addressed by the majority, I cannot agree that we lack jurisdiction over the entire claim. The majority opinion effectively overrules our decision in Roebuck v. Nicholson, 20 Vet.App. 307 (2006), by limiting the case to its facts. The majority does so in the name of administrative efficiency. However, I cannot agree that administrative efficiency trumps a veteran’s interest in receiving the full *194 amount of benefits that he is entitled to by virtue of his service to a grateful nation.
“An epigram widely attributed to Abraham Lincoln is appropriate in this case: How many legs does a dog have if you count his tail as a leg? Four. You can call a tail a leg if you want to, but it doesn’t make it a leg.” Kuzma v. Principi, 16 Vet.App. 140, 145 (2002) (en banc per curiam order) (Ivers, J. dissenting); see also Arteaga v. Mukasey, 511 F.3d 940, 946 (9th Cir.2007) (using Lincoln’s wisdom to conclude that “calling a street gang a ‘social group’ as meant by our humane and accommodating [asylum] law does not make it so”); First Liberty Inv. Group v. Nicholsberg, 145 F.3d 647, 652 (3d Cir.1998) (applying the epigram to conclude that an employer could not escape an arbitration clause by labeling an employee as an “independent contractor”). The majority opinion holds that a Board decision is final because the Board says it is. I disagree. I believe that a Board decision does not become final until it is ripe for judicial review, regardless of the Board’s desire to wash its hands of a particular theory before the claim has been fully developed and adjudicated. See DiCarlo v. Nicholson, 20 Vet.App. 52, 57 (2006) (stating that finality is “a measure of procedural maturity”); Mokal v. Derwinski, 1 Vet.App. 12, 15 (1990) (adopting “as a matter of policy the jurisdictional restrictions of the Article III case or controversy rubric”). The practical effect of the majority’s holding is that a claim can be finally denied on one theory before the evidence is fully developed and VA is fully informed as to the nature of the veteran’s current condition and its etiology.
It is quite reasonable to expect that, after full development of the claim, a Board decision denying a claim on one theory will be contradicted by new evidence developed on remand of a different theory. For example, a Board decision could — as happened here — deny a claim on theory A because the evidence is against it, but remand the claim for further development on theory B. If the denial of theory A is a separate decision that must be appealed immediately, then an appellant may be prejudiced if this partial denial is final. It is easy to imagine a scenario where the remand as to theory B produces a new medical opinion that actually supports theory A instead because new facts come to light, there is an advance in medical knowledge, or there is simply a disagreement of opinion by a new expert reviewing the claim. However, if theory A has already been finally denied — either because the Board decision was not appealed or because the Court affirmed that decision based on the record as it existed at the time of the Board decision — then the appellant is now in the position of being finally denied as to both theories even though the evidence supports granting the claim as to a theory that was denied based upon an underdeveloped record. Even if the appellant realizes that the new evidence is material as to the theory that was originally denied, the effective date awarded upon reopening will be based upon the new claim rather than the original claim— potentially costing the appellant years of benefits. While such a process is administratively convenient, it is also deeply unfair.
There might be ways in which a claimant who is savvy or advised by counsel could avoid this prejudice. Perhaps the appellant could appeal the final decision as to theory A and argue that appellate review is premature until theory B is fully developed and decided because they are inexti'icably intertwined. However, the majority opinion holds, in essence, that alternative theories of entitlement are not presumed to be inextricably intertwined, see ante at 18, and the evidence showing *195 that the theories are intertwined may not be before the Court because it is not developed until after the remand of theory B.
However, most claimants do not have attorneys at the Board level or when they file their NOAs to Board decisions. The majority decision purports to save claimants from the burden of determining whether a Board decision should be appealed by adopting a bright-line rule that Board decisions that purport to be final must always be appealed. Ante at 18. However, this “benefit” to claimants is actually a mirage because it assumes that unrepresented claimants will know that the Court has adopted this bright-line rule. It is much more likely that a pro se appellant will (1) not understand that a Board decision that remands a claim as to some theories is still final as to the others; (2) accept the decision without knowledge of the evidence that will be developed on remand; or (3) appeal the denied theory on the merits even though the full record for the claim has yet to be developed. Under any framework, a premature NOA can never hurt a claimant. Only under the majority decision is a claimant penalized for not filing an NOA each time an individual theory is rejected.
The majority opinion also fails to reconcile its notion of theory-by-theory finality with the plain language of 38 U.S.C. § 5108. Section 5108 permits a claimant to reopen “a claim which has been disallowed” by submitting new and material evidence. What happens when a claimant obtains evidence that is new and material to a theory that has been finally denied before the whole claim has been denied? Would the appellant file a separate claim to reopen a claim that is still pending and being adjudicated? Similarly, 38 U.S.C. § 5110 limits the effective date for an award of benefits to the date of “the original claim” or “a claim reopened after final adjudication” to no earlier than the “date of the receipt of the application therefor.” What is the effective date if theory B never becomes final before theory A is reopened and results in the grant of the claim? Section 5103(a)(1) of title 38 requires the Secretary to provide notice of “the evidence necessary to substantiate the claim” whenever a person applies for benefits. If theory A is still being processed and a claimant wants to reopen theory B, is any notice required given that no new claim is being filed? If notice is required, does it actually apply to the whole claim, or just to the theories that were previously denied? See Kent v. Nicholson, 20 Vet.App. 1 (2006) (section 5103(a) notice as to an application to reopen a claim must be tailored to the basis of the prior, final denial).
The Secretary’s duty to assist has also been defined by Congress in terms of claims. See 38 U.S.C. § 5103A. Suppose a remand of theory B for a new medical opinion produces one that “indicates” that theory A may have merit, but theory A has already been finally denied. Is 38 U.S.C. § 5103A(d) triggered? See McLendon v. Nicholson, 20 Vet.App. 79 (2006). On its face, the duty applies to the claim, not to the theory. If section 5103A(d) revives the previously final theory A without an application (or even any intent) to reopen, what would be the effective date and what date would be relevant for determining what law was in effect at the time the claim was filed?
Although the majority opinion fails to address any of these issues, it puts the Court on course to simply mark out every instance of the word “claim” in title 38 and pencil in “theory” in order to make the statute functional. The alternative would be for the Court to pick and choose when Congress meant “theory” when it actually wrote “claim.” I find either solution whol *196 ly unacceptable. See Tropf v. Nicholson, 20 Vet.App. 317, 321 n. 1 (2006) (“Without standard word meanings and rules of construction, neither Congress nor the Secretary can know how to write authorities in a way that conveys them intent and no practitioner or — more importantly — veteran can rely on a statute or regulation to mean what it appears to say.”); The FedeRalist No. 62 (James Madison) (“It will be of little avail to the people that the laws are made by men of their own choice, if ... no man who knows what the law is today can guess what it will be tomorrow.”).
The only realistic benefit to claimants cited by the majority is that claimants may receive faster judicial review of the denied theories if claims may be denied and appealed on a piecemeal basis. Ante at 15. However, premature judicial review is likely to harm the appellant because the Court is prohibited from considering favorable evidence developed after the Board decision on review and may affirm the denial without benefit of the new information. See Bonhomme v. Nicholson, 21 Vet.App. 40, 43-45 (2007). More importantly, once the Court has gone down the track of allowing some types of interlocutory appeals in the name of faster justice, it is not apparent where the train will stop. If the Board rejects an argument concerning the duty to notify or the duty to assist, but remands for a different type of development, why should an appellant wait years before the Court gets involved? Conversely, the majority also fails to recognize that if the RO grants benefits on the second theory on remand, then any review of the first Board decision denying the same benefit is moot. The potential for the Court to waste time on moot appeals is part of the central reason why finality should be based upon principles of ripeness rather than blind deference to the Board. Hence, the Court’s decision effectively overrules Mokal by abandoning both ripeness and mootness as limitations on our jurisdiction. See 1 Vet.App. at 15.
Rather than ripeness or mootness, the majority purports to manage our theory-by-theory jurisdiction on the Board’s choice to include “an ‘order granting appropriate relief or denying relief.’ ” Ante at 9 (quoting 38 U.S.C. § 7104(d)). However, this standard grants the Board power to arbitrarily allow or deny claimants the ability to appeal theories by choosing whether to include such an order. For example, a Board decision may include a discussion of why the evidence does not support theory A, but remand for a new medical opinion addressing theory B. If the Board includes an order line formally denying theory A, then it must be immediately appealed. However, if it does not include such a line and remands the whole claim, then the decision is not appealable. By tying our jurisdiction to a technicality controlled by the Board, we grant the Secretary a tool to manage our jurisdiction as he sees fit. Cf. Ribaudo v. Nicholson, 20 Vet.App. 552 (2007) (en banc) (rejecting the argument that the Secretary has inherent authority to stay cases pending an appeal of a Court opinion to the Federal Circuit); Marsh v. West, 11 Vet.App. 468, 470 (1998) (“This Court has been wary of action or inaction by the B[oard] that would have had the effect of depriving this Court of jurisdiction to review a B[oard] decision over which the Court would have had jurisdiction but for the B[oard]’s action or inaction.”). Alternatively, the Court will get involved in the business of determining whether a Board’s discussion of a theory amounts to a formal denial regardless of the technicality.
I would also note that the majority’s new concept of finality for Board decisions is inconsistent with the nature of finality at the regional office level. It is well established that RO decisions are appealed on a *197 claim-by-claim basis by the appellant’s filing a Notice of Disagreement (NOD). So long as a timely NOD is filed, an appellant is free to raise any theory of entitlement to the Board and the Board must consider all theories of entitlement raised by the record even if the theories are not raised by the claimant. See Robinson v. Peake, 21 Vet.App. 545, 553 (2008). Nonetheless, the majority concludes that a theory-by-theory concept of finality applies at the Board level even though claim-by-claim finality applies at the RO level. Moreover, it is not apparent how the majority opinion’s concept of theory-by-theory finality can be reconciled with the Federal Circuit’s decision in Bingham v. Nicholson that “[u]n-der [38 U.S.C. § 7104(b)], finality attaches once a claim for benefits is disallowed, not when a particular theory is rejected.” 421 F.3d 1346, 1348-49 (Fed.Cir.2005).
The majority opinion asserts that applying Roebuck as written “creates a new exception to the rule of finality and ignores the fact that Roebuck explicitly was based on unique circumstances.” Ante at 11. Nothing could be further from the truth. I read Roebuck as an application of well established, general principles of finality for appellate review. It has been more than 40 years since the Supreme Court explained
The long-established rule against piecemeal appeals in federal cases and the overriding policy considerations upon which that rule is founded have been repeatedly emphasized by this Court.... [T]he rule as to finality “requires that the judgment to be appeal-able should be final not only as to all the parties, but as to the whole subject-matter and as to all the causes of action involved.”
Andrews v. United States, 373 U.S. 334, 340, 83 S.Ct. 1236, 10 L.Ed.2d 383 (1963) (quoting Collins v. Miller, 252 U.S. 364, 370, 40 S.Ct. 347, 64 L.Ed. 616 (1920)) (citations omitted). This concept has been widely embraced by the federal appellate courts. See, e.g., Garner v. U.S. West Disability Plan, 506 F.3d 957, 960-61 (10th Cir.2007) (holding that a district court’s characterization of its order as “final” is not binding and that “courts do not ordinarily treat the burden of having to participate in [additional] litigation as one that justifies appeal from a nonfinal order”); Dieser v. Continental Cas. Co., 440 F.3d 920, 923 (8th Cir.2006) (“A final decision ... ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.” (internal quotation omitted)); Nichols v. Cadle Co., 101 F.3d 1448, 1448-49 n. 1 (1st Cir.1996) (noting that certification of a pre-mature appeal “by a well-intentioned district judge can create a minefield for litigants and appellate courts alike” and holding that “a judgment is final (and, thus, appealable ...) only if it conclusively determines all claims of all parties to the action”). Hence, I do not advocate for the creation of any type of “finality claim,” but only for the application of the general rule defining when a claim is final. Cf. DiCarlo, 20 Vet.App. at 57 (“Finality is ... a measure of procedural maturity. It distinguishes processes that have been completed from those that have not.”).
Of course, if Congress desired to give this Court some interlocutory review power, it could certainly do so. Such authority might be narrowly tailored to rulings of law that would be appropriate for such review. See 38 U.S.C. § 7292(b)(1) (permitting interlocutory appeals to the Federal Circuit where “the ultimate termination of the case may be materially advanced by the immediate consideration of [the] question”). If such a change were made, then the Court might be authorized to review issues peculiarly suited to interlocutory review without jeopardizing the claimant’s *198 effective date by torturing the definition of “a final Board decision” on a claim. Accordingly, I see neither the statutory authority for the Court’s ruling nor the benefit to veterans created by encouraging piecemeal litigation. Cf. Matthews v. Nicholson, 19 Vet.App. 202, 206 (2005) (per curiam order) (“The Court cautions counsel against engaging in piecemeal litigation.”); Snyder v. Principi, 16 Vet.App. 62, 69 n. 3 (2002) (en banc per curiam order) (Steinberg, J., concurring) (“The Secretary should need no reminder of the Court’s longstanding policy to discourage piecemeal litigation.”); Burton v. Principi, 15 Vet.App. 276, 277 (2001) (per curiam order) (“We should not encourage the kind of piecemeal litigation in which the appellant here has engaged.”).
Despite my misgivings, I would be constrained to agree with the majority if its opinion of the controlling caselaw cited compelled the outcome reached. Fortunately, it does not. Notably, the majority cites both Maggitt v. West, 202 F.3d 1370 (Fed.Cir.2000), and Joyce v. Nicholson, 443 F.3d 845 (Fed.Cir.2006), and then proceeds to ignore the plain language it quotes from those opinions. As quoted by the majority, Maggitt defines the finality of a Board decision in terms of “ ‘the benefit sought by the veteran.’” Ante at 9 (quoting 202 F.3d at 1376). Yet, inexplicably, the majority does not further address or apply Maggitt. Instead of applying this clear language, the majority relies upon language from the Federal Circuit’s decision in Elkins v. Gober, 229 F.3d 1369 (Fed.Cir.2000), while attempting to avoid acknowledging that it ruled on the finality of different claims, not different theories. While there is much Federal Circuit case-law noting that judicial review of one claim may need to wait until agency adjudication of another claim is complete, it does not logically follow that individual theories of entitlement within one claim may be reviewed piecemeal.
The majority also relies on an overly broad reading of the Federal Circuit’s decisions in Grantham v. Brown, 114 F.3d 1156, 1158-59 (Fed.Cir.1997), and Barrera v. Gober, 122 F.3d 1030, 1032 (Fed.Cir.1997). They are cited for the proposition that the Federal Circuit has blessed the concept of exercising jurisdiction over any issue where the Board purports to have rendered a final decision. Nothing could be further from the truth. The issue in both of those cases was whether the downstream elements of rating and effective date must be disputed through a new Notice of Disagreement even though one had previously been filed disputing a denial of service connection. See Barrera, 122 F.3d at 1031; Grantham, 114 F.3d at 1158. The actual holding of Grantham — as relied upon in Barrera — was that the appeal of “the logically up-stream element of service connectedness” was independent of “the logically down-stream element of compensation level.” Grantham, 114 F.3d at 1158-59. In other words, a dispute over the service-connection element of a disability compensation claim is jurisdictionally distinct from any dispute over a disability rating and effective date that is later awarded. This makes perfect sense. There is no reason to assume that an appellant who obtains a remand after initially losing on the service-connection element will necessarily be disappointed in the disability rating or effective date after prevailing on the service-connection element of a disability compensation claim on remand. Accordingly, it makes sense to require such an appellant to initiate a new appeal to express disagreement with the logically down-stream issues. Nothing in Grantham’s discussion of “logically downstream elements” supports the proposition that alternative theories for proving the *199 same element may be appealed independently of each other.
I believe the ultimate flaw in the majority’s use of Federal Circuit caselaw is that it traces back to precedent outside the claimant-friendly realm of veterans law. As the majority notes, Elkins relies upon Dewey Electronics Corp. v. United States, 803 F.2d 650 (Fed.Cir.1986). Not only did Dewey Electronics Corp. involve separate claims, as clearly stated in the opinion, it involved a sophisticated corporation suing the Federal Government for a contract violation. Id. at 651-53. In a contract suit — as with most cases in American law — the plaintiff is responsible for gathering and presenting all the evidence to support his claim. If the plaintiff fails to do so, then he has no one to blame but himself if appellate review of the agency contracting decision is reviewed based upon an inadequate record. Veteran benefits claims are an exception to this general rule. In this area, VA owes substantial duties to assist the claimant in the development of the claim. Therefore, it is inappropriate to presume that errors that clearly prejudice the development of evidence as to one theory of entitlement did not prejudice any other theory that may support an award of benefits. Hence, the majority opinion’s analysis importing a concept of finality suited to sophisticated claimants before other agencies is fundamentally flawed. In addition, as the Federal Circuit observed in Dewey Electronics Corp., “the agency’s characterization of a decision is not determinative of the finality issue and the relevant statutes outlining the required administrative procedures must be examined.” Id. at 654. In other words, even the caselaw relied upon by Elkins recognized that courts may reject an agency’s attempt to point to a tail and call it a leg. See also Fagre v. Peake, 22 Vet.App. 188, 191 (2008) (per curiam order) (rejecting the Secretary’s characterization of a single Board decision as multiple separate Board decisions issued together).
In summary, I do not think that administrative convenience can justify the outcome reached here or the concomitant confusion and delays that will be generated as a result. Rather, because the majority opinion ignores the plain language of title 38 and controlling Federal Circuit precedent, overrules our pan el decision in Roebuck, and will prejudice veterans who will receive final Board decisions denying benefits based upon records that are admittedly underdeveloped, I must respectfully dissent.